**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson,<br><br>                Petitioner,<br>v.<br>C. Howard, Warden,[1]<br><br>                Respondent. | No. CV-18-0433-TUC-RM (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Jeremy Pinson's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1).  Respondents have filed a Return and Answer to Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus ("Answer") (Doc. 15), and Petitioner replied (Doc. 16).  The Petition is ripe for adjudication.  Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.  The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

**I.  PROCEDURAL BACKGROUND**

At the time Petitioner filed her Petition (Doc. 1), Petitioner was an inmate

---

[1] The Court takes judicial notice that Juan Baltazar is no longer warden of USP–Tucson. As such, the Court will substitute the new Complex Warden at the Federal Correctional Complex in Tucson, Arizona, which includes USP–Tucson.  Accordingly, Warden C. Howard is substituted as the sole Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

incarcerated at the United States Penitentiary ("USP") in Tucson, Arizona ("USP–Tucson").  *See* Petition (Doc. 1).  Petitioner is currently incarcerated at USP Coleman II in Sumterville, Florida.  *See* Fed. Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 3, 2021).  In light of Petitioner's incarceration at FCI–Tucson at the time of the Petition's filing, this Court retains jurisdiction to consider the Petition.  *See Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990) ("jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change.") (citation omitted).  Petitioner is serving a 252-month aggregate sentence for Threats Against the President, False Statement, Threat to a Juror, and Mailing Threatening Communications in violation of Sections 871(a), 876(c), 1001(a)(2), and 876, Title 18, United States Code.  *See* Response (Doc. 15), Brieschke Decl. (Exh. "A"), Public Info. Inmate Data (as of Dec. 19, 2018) (Doc. 15-2) at 7–9.[2]  Petitioner's projected release date is June 19, 2026.  *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 3, 2021).  On August 24, 2018, Petitioner filed a Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody.  *See* Petition (Doc. 1).  Petitioner challenges a disciplinary conviction that resulted in her loss of privileges and good time credits.  *Id.* at 4.  Petitioner alleges that she was falsely charged and was not permitted witnesses or documentary evidence at her disciplinary hearing.  *Id.*  Petitioner requests this Court order Respondent to expunge Officer Whelton's report.  *Id.* at 9.

## II.     FACTUAL BACKGROUND

On April 27, 2018 at approximately 10:45 a.m., Officer S. Whelton observed Petitioner "standing in the medical corridor with inmate Long #08071-059 in front of the mail room door."  Response (Doc. 15), Brieschke Decl. (Exh. "A"), Incident Rpt. No.

---

[2] Page citations refer to the Case Management/Electronic Case Files ("CM/ECF") page number for ease of reference.

3117895 (Doc. 15-2) ("Attach. "3"") at 45; *see also* Petition (Doc. 1) at 4.[3] Officer Whelton "asked them what they were doing[,] [and] Inmate Pinson stated that the housing unit officer told her that she had legal mail and that was why she was in the corridor." Response (Doc. 15), Exh. "A," Attach. "3" at 45; *see also* Petition (Doc. 1) at 4. Officer Whelton "called the housing unit officers and they informed [her] that they never spoke to that inmate [that day]." Response (Doc. 15), Exh. "A," Attach. "3" at 45. Officer Whelton "also checked with the mail room staff and Inmate Pinson did not pick up or drop off any mail." *Id.* Officer Whelton charged Petitioner with lying and with being in an unauthorized area. *See* Response (Doc. 15), Exh. "A," Attach. "3"; *see also* Response (Doc. 15), Exh. "A," Attach. "2" at 13.

The following day, Senior Officer Specialist ("S.O.S.") K. Lake delivered the incident report to Petitioner. Response (Doc. 15), Brieschke Decl. (Exh. "A"), Incident Rpt. No. 3117895 ("Attach. "3"") (Doc. 15-2) at 45. S.O.S. Lake also investigated the incident and advised Petitioner of her rights. *Id.*, Exh. "A," Attach. "3" at 46. Petitioner indicated that she understood those rights. *Id.* During S.O.S. Lake's investigation, Petitioner stated, "I did have legal mail. Ms. Whelton just wanted to be rude and started yelling at me[.]" *Id.* S.O.S. Lake found the incident report was "accurate, based on the charges and [] valid and justified as written." *Id.* S.O.S. Lake noted that "this incident report will be informally resolved through a verbal counseling concerning [Petitioner's] actions." Response (Doc. 15), Brieschke Decl. (Exh. "A"), Incident Rpt. No. 3117895 ("Attach. "3"") (Doc. 15-2) at 46.

On April 30, 2018, the Unit Discipline Committee ("UDC") conducted a hearing on the incident. Response (Doc. 15), Exh. "A," Attach. "3" at 45. At the hearing, Petitioner stated that she "t[ook] responsibility for her actions." *Id.* The UDC found that

---

[3] The Incident Report at Attachment "3" does not contain an Incident Report Number. This number was derived by cross-referencing the date and time of the report with Petitioner's Inmate Discipline Data—Chronological Disciplinary Record. *See* Response (Doc. 15), Exh. "A," Inmate Discipline Data—Chronological Disciplinary Record (Attach. "2") (Doc. 15-2) at 13.

Petitioner "[c]omitted the Prohibited Act as charged[,]" and imposed a sanction of thirty (30) days loss of commissary privileges. *Id.* The UDC did not refer the charges to the Discipline Hearing Officer ("DHO"). *Id.*

Petitioner did not submit an Administrative Remedy appeal regarding the UDC findings from Incident Report No. 3117895. *See* Response (Doc. 15), Brieschke Decl. (Exh. "A"), Admin. Remedy Gen. Retrieval 12/19/2018 (Attach. "4") (Doc. 15-2).[4]

## II. ANALYSIS

### A. *Jurisdiction*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement." *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973)). "A civil rights action, in contrast, is the proper method of challenging 'conditions of . . . confinement.'" *Id.* (alteration in original) (citing *Preiser*, 411 U.S. at 498–99, 93 S. Ct. at 1840–41). The Ninth Circuit Court of Appeals has recognized habeas corpus jurisdiction pursuant to Section 2241, Title 28, United States Code, for a prisoner's claims that (1) "[s]he has been denied good time credits without due process of law"; (2) "[s]he has been subjected to greater restrictions of [her] liberty, such as disciplinary segregation, without due process of law"; and (3) she is entitled to "expungement of a disciplinary finding from [her] record if expungement is likely to accelerate the prisoner's eligibility for

---

[4] Remedy ID 954214-F1 notes that it was an appeal of a UDC decision, and Petitioner claimed that the Incident Report was written in retaliation. Response (Doc. 15), Brieschke Decl. (Exh. "A"), Admin. Remedy Gen. Retrieval 12/19/2018 (Attach. "4") (Doc. 15-2) at 53. This appeal, however, was related to Incident Report No. 3159073. Response (Doc. 15), Brieschke Decl. (Exh. "A"), Request for Admin. Remedy (BP-9) 8/20/2018 (Attach. "5") (Doc. 15-2) at 57.

parole." *Bostic v. Carlson*, 84 F.2d 1267, 1269 (9th Cir. 1989) (citations omitted), *overruled on other grounds by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (*en banc*). In other words, "[s]uits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of [her] prison life, but not to the fact or length of [her] custody."[5] *Ramirez v. Galaza*, 334 F.3d 850, 857 (9th Cir. 2003) (quoting *Preiser*, 411 U.S. at 498–99, 93 S. Ct. at 1840–41).

Here, Petitioner seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. *See* Petition (Doc. 1). Although her Petition (Doc. 1) indicates a loss of good time credits, the only sanction imposed was a thirty (30) day loss of commissary privileges. Response (Doc. 15), Brieschke Decl. (Exh. "A"), Incident Rpt. No. 3117895 ("Attach. "3") (Doc. 15-2) at 46. Thus, "[t]he sanction imposed did not affect the length of time [Petitioner] will serve in custody and did not change h[er] release date from prison[,] [and] [a]s a result, [s]he cannot pursue this grievance against prison officials by way of habeas corpus." *Elkins v. Jusino*, 2020 WL 4589058, at *2 (C.D. Cal. June 22, 2020) (citations omitted); *see also Everett v. Clark*, 52 Fed. App'x 959, 960 (9th Cir. 2002) (affirming lower court's finding that § 2241 petitioner seeking relief for loss of commissary privileges failed to state a claim for relief); *Strouse v. Shartle*, 2017 WL 2224926, at *2 (D. Ariz. May 22, 2017) (recommending dismissal for lack of jurisdiction where petitioner did not challenge the fact or duration of confinement).

In reply, Petitioner asserts that the Supreme Court of the United States "made clear in Ziglar, that Habeas Relief was an available remedy to address prison conditions issues[.]" Reply (Doc. 16) at 2 (citing *Ziglar v. Abbassi*, — U.S. —, 137 S. Ct. 1843, 198

---

[5] For federal prisoners a civil rights suit is brought pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

L. Ed. 2d 290 (2017)).  Petitioner's contention is misplaced.  *Ziglar* involved the treatment of six (6) men of Arab or South Asian descent, who were in the country illegally, "arrested during the course of the September 11 investigation, and detained in the Administrative Maximum Special Housing Unit for periods ranging from three to eight months."  *Ziglar*, — U.S. —, 137 S. Ct. at 1853.  "The complaint named as defendants three high executive officers in the Department of Justice and two of the wardens at the facility where the detainees had been held."  *Id.*, 137 S. Ct. at 1851. "Seeking to invoke the Court's decision in *Bivens*, respondents brought four claims under the Constitution itself . . . alleg[ing] that petitioners detained them in harsh pretrial conditions for a punitive purpose, in violation of the substantive due process component of the Fifth Amendment[;] . . . [their detention was] because of their actual or apparent race, religion, or national origin, in violation of the equal protection component of the Fifth Amendment[;] . . . the Wardens subjected them to punitive strip searches unrelated to any legitimate penological interest, in violation of the Fourth Amendment and the substantive due process component of the Fifth Amendment[;] . . . [and] the Wardens knowingly allowed the guards to abuse respondents in violation of the substantive due process component of the Fifth Amendment."  *Id.*, 137 S. Ct. at 1853–54.  "Respondents also brought a claim under 42 U.S.C. § 1985(3), which forbids certain conspiracies to violate equal protection rights."  *Id.*, 137 S. Ct. at 1854.  The Court considered, *inter alia*, whether it should extend a *Bivens*-type remedy to respondents' challenge to the conditions of their confinement.  *Ziglar v. Abbassi*, — U.S. —, 137 S. Ct. 1843, 1859, 198 L. Ed. 2d 290 (2017).  In making this assessment, the Court observed that respondents "challenge[d] large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners."  *Id.*, 137 S. Ct. at 1862.  The Court further observed that it had "left open the question whether [respondents] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus" as a possible alternative form of judicial relief.  *Id.*, 137 S. Ct. at 1862–63.  The Court reiterated the existence of such alternative remedies in declining to authorize a *Bivens*

1  claim against the Warden for alleged prisoner abuse, but returned the issue to the lower
2  courts for consideration in the first instance. *Id.*, 137 S. Ct. at 1864–65.  Noting the
3  possibility of habeas corpus relief for certain condition of confinement claims does not
4  confer jurisdiction on Petitioner's claim in this case.

5  Petitioner also asserts in her reply that she is entitled to relief because "BOP
6  violated its own policy by failing to dispose of the incident report following 'counseling'
7  the petitioner when it counseled petitioner 'informally' then proceed[ed] to discipline her
8  anyways."  Reply (Doc. 16) at 1.  "A habeas claim cannot be sustained based solely upon
9  the BOP's purported violation of its own program statement because noncompliance with
10 a BOP program statement is not a violation of federal law."  *Reeb v. Thomas*, 636 F.3d
11 1224, 1227 (9th Cir. 2011).  As such, this claim should be dismissed for a lack of
12 jurisdiction.

13 Finally, Petitioner's declaration in support of her reply indicates that "[b]ecause of
14 this incident report, my male custody classification score is higher which maintains my
15 placement in a maximum security BOP facility."  Reply (Doc. 16) at 3.  To the extent that
16 this can be construed as separate claim for expungement, the Court is without
17 jurisdiction.  "[A] prisoner has no constitutional right to a particular classification status."
18 *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).  "In *Moody v. Daggett*, 429
19 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 471 (1976), the Supreme Court, in a footnote,
20 expressly rejected a claim that 'prisoner classification and eligibility for rehabilitative
21 programs in the federal system' invoked due process protections.  *Hernandez*, 833 F.2d at
22 1318 (quoting *Moody*, 429 U.S. at 88 n. 9, 97 S. Ct. at 279).  In *Hernandez*, the Ninth
23 Circuit Court of Appeals noted that "[a] different question might be presented if a
24 prisoner's classification adversely affected h[er] eligibility for parole or good time
25 credits[,]" but declined to decide that issue.  *Hernandez*, 833 F.2d at 1318.  Because
26 Petitioner does not have a constitutional right to a particular classification status, and her
27 challenge to the disciplinary proceeding will not affect the duration of her confinement,
28 this claim should be dismissed for a lack of jurisdiction.

### B. *Mootness*

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). "The jurisdiction of federal courts is defined and limited by Article III of the Constitution." *Flast v. Cohen*, 392 U.S. 83, 94, 88 S. Ct. 1942, 1949, 20 L. Ed. 947 (1968). Further, the judicial power of this and all federal courts is limited to actual cases or controversies. U.S. Const. art. III; *see also, Flast*, 392 U.S. at 94–95, 88 S. Ct. at 1949–50 (1968). "In general a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 1183, 71 L. Ed. 2d 353 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S. Ct. 1202, 1208, 63 L. Ed. 2d 479 (1980)).

The Court lacks jurisdiction over Petitioner's habeas claim, but she may be entitled to assert a claim in a civil rights suit. *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (a civil rights suit is the proper method to challenge conditions of confinement). Petitioner's thirty (30) day loss of commissary, however, has apparently expired. As such, any potential civil rights claim would be moot. *See Wilson v. Terhune*, 319 F.3d 477, 482–83 (9th Cir. 2003) (holding that in a challenge to expired prison disciplinary sanction moot where collateral consequences have not been alleged). As such, the Court declines to convert Petitioner's habeas petition to a *Bivens* complaint.

### III. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DISMISSING Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) for lack of jurisdiction.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after

being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CV-18-0433-TUC-RM**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.  The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 12th day of March, 2021.

Honorable Bruce G. Macdonald
United States Magistrate Judge